WILLIAM N. DIXON ET AL. V. THE CITY OF DETROIT ET AL.

*Municipal corporations—Public improvements—Contract—Fraud—Equity—Acceptance of work—Discretion of officers.*

1. Where a city, acting through its authorized agents, lets a contract for a public improvement for a grossly extravagant price, or permits fictitious items to be included in the sum to collect which an assessment is levied, a fraud is perpetrated upon the property-owners, which may call upon a court of equity to interfere and vacate the assessments, or reduce the amount which the complainants should pay; citing *In re Livingston*, 121 N. Y. 94.

2. This Court has never interfered with the discretion of the authorized agents of municipalities in the exercise of the powers granted by the Legislature, except when there was a want of jurisdiction in the proceedings.

3. It is no defense to the enforcement of an assessment for a public improvement that the work and material were not such as the contract called for; citing *Motz v. Detroit*, 18 Mich. 515; Cooley, Tax'n, 671.

Appeal from Wayne. (Reilly, J.) Argued May 8, 1891. Decided July 28, 1891.

Bill to restrain the collection of a special assessment. Complainants appeal. Decree affirmed. The facts are stated in the opinion.

*James H. Pound,* for complainants, contended:

1. That *Whitney v. Village of Hudson*, 69 Mich. 189, 202, 206, is an authority for the interposition of the court; and that action was taken in *Twiss v. Port Huron*, 63 Mich. 529, which supports complainants' case.

2. The contract being between the city of Detroit and the defendant Merdian, that he should construct a pavement according to certain specifications and estimates, and according to all conditions and to the acceptance of the city (which

certainly means the legislative and executive branches of the city government), and the acceptance having been vetoed by the mayor, and never passed over it, no tax enforcement proceedings can be maintained or be based thereon.

*Edward Minock,* for defendants, contended for the doctrine of the opinion.

CHAMPLIN, C. J. William N. Dixon and seven other property-owners, residents upon Myrtle street in the city of Detroit, filed their bill of complaint for and in behalf of themselves and all other property-owners upon said street who should desire to take advantage of the bill and contribute to the prosecution, who were assessed for the improvement of Myrtle street.

The bill of complaint sets forth the history of the steps that were taken pursuant to the charter of. the city of Detroit to pave Myrtle street. It does not point out or allege any jurisdictional defect in the proceedings, but charges that the board of aldermen of the city perpetrated a gross fraud upon said complainants in awarding the contract to Henry Merdian for a sum greatly in excess of its worth, and as the result of a corrupt pool among the various firms doing a paving business in the city of Detroit, of which the board of aldermen had notice.

The charge is made that the improvement was not performed in accordance with the. plans and specifications which formed a part of the contract; that the materials were not such as the contract called for, nor the work done in accordance therewith; and the bill points out wherein the defects exist, both in material and mode of construction, and states that complainants made complaint from time to time as the work progressed, both to the board of aldermen and to the board of public works, under whose supervision the work was being done, and that no attention was paid to their protests and com-

plaint; that, when the contractor claimed to have com-
pleted the job, they protested to the common council,
and objected to its being accepted, and also objected to
the contractor being paid therefor; that, nevertheless,
the board of public works reported the job as having
been completed according to contract to the common
council, and they accepted the job, and voted to pay the
contractor therefor; that the mayor vetoed such resolu-
tion, and that one of the complainants filed a bill to
restrain such payment, and obtained an injunction,
which was afterwards dissolved, and immediately the con-
tractor was paid, reserving $582.84 to repair the street,
which since that time has been expended in repairs,
besides other moneys appropriated for that purpose. It
is charged that the common council made a special
assessment district, comprised of property they deemed
benefited by making such improvement, to defray the
cost and expense thereof.

The bill further alleges as follows:

"And your orators further aver unto this court that in
letting said contract of paving to the said Henry Mer-
dian, and in constituting said Myrtle street within the
aforesaid limits a local assessment district, the said city
of Detroit, by its common council and the board of pub-
lic works of said city, acted as, and assumed the func-
tions and liability of, trustees for the citizens of said city
of Detroit, and as trustees for the property-owners own-
ing property abutting upon said Myrtle street, and within
the special assessment district created for the purpose
of paving said Myrtle street; and that it was and still is
the duty of said city of Detroit, and of the common
council thereof, and of its board of public works, to
secure to the owners of property fronting or abutting
upon said Myrtle street a pavement composed of the best
material of its class, and made according to the best
workmanship; and that said owners of property abutting
on said Myrtle street are entitled to look to the said city
of Detroit for guaranty that their money, paid upon
assessment under the power of taxation for that purpose,

shall not be invested in any other than good pavement, made in a workman-like manner, and not in an inferior pavement, even at a cheap price; but your orators are informed and believe, and hence charge the fact to be, that said city of Detroit, having paid therefor so far as it could, is now proceeding to enforce the special assessment by sale of the property of your orators and others in the taxing district created for paving said Myrtle street, and that the city of Detroit is thereby inflicting upon your orators a fraud, which they pray this court to relieve them against, and that by forms of law they would be defrauded of large sums of money each, for which they would receive no adequate consideration, if the city of Detroit be permitted to enforce the full collection of the special assessments aforesaid, without deducting for the inferior quality of the work at least."

The prayer of the bill is as follows:

"To the end, therefore, that said property-owners and your orators may have secured to them the true value of their money, and that, until they do, the said tax liens may be declared inoperative and void, and in any event suspended, your orators pray that · the city of Detroit, and Simon C. Karrer, its receiver of taxes, and said Henry Merdian, contractor, as aforesaid, may be made parties defendant to ˉthis bill, and required to answer the same (their answer on oath being hereby expressly waived), and each material allegation therein; and that the said defendants may be, by order of this honorable court, restrained and enjoined from further proceeding with the sale upon the tax levy on the special assessment district of Myrtle street, as aforesaid; and that the same may be declared void; and, further, that your orators may have such other and further relief in the premises as the nature of their cause may require, and as shall seem meet unto equity."

A large amount of testimony was taken, by which, I think, it was made to appear that the improvement was not, made in accordance with the plans and specifications; and it appeared that about the time the job was completed, and before it was accepted, a rain storm set in, and, as the result either of the great quantity of rain that fell or of the

defective manner of construction, the cedar blocks, with
which a portion of the road-bed was paved, were more or
less loosened, floated out of place, and the street became
greatly out of repair. But the allegation of fraud in let-
ting the contract was not substantiated by the testimony.

In the view we take of the law, it is not necessary for
us to determine whether the street ought or ought not
to have been accepted by the city authorities. The com-
plainants do not ask to be relieved from the payment of
any sum, but from paying more than the pavement as
made is reasonably worth; but we have not a criterion,
were it permissible for us to do so, by which to ascertain
just what such worth is. The proof does not establish
how much, if any, the property is benefited by the
improvement less than what it would be if the work had
been fully performed according to contract; nor is there
any testimony tending to prove that the contract was let
at an exorbitant price. If the city, acting through its
authorized agents, had let the job for a grossly extrava-
gant price, or permitted fictitious items to be included in
the sum to collect which the assessment was levied, it
would have operated as a fraud upon the property-own-
ers, which might have called upon a court of equity to
interfere and vacate the assessments, or reduce the
amount which complainants should pay. *In re Living-
ston*, 121 N. Y. 94.

We have never interfered with the discretion of the
authorized agents of municipalities in the excercise of
the powers granted by the Legislature, except when there
was a want of jurisdiction in the proceedings. Here the
matters complained of are not jurisdictional, but are
irregularities not affecting the jurisdiction, and mainly
for the reason that the work and material were not such
as the contract called for. That such objection is no
defense to the enforcement of the assessment was directly

held in *Motz v. Detroit*, 18 Mich. 515. See, also, Cooley, Tax'n (2d ed.), 671; *Wells v. Atlanta*, 43 Ga. 67; *Hovey v. Mayo*, 43 Me. 322; 15 Amer. & Eng. Cyc. Law, 1046.

We think the decree of the court below, dismissing the bill, should be affirmed, with costs.

MORSE and LONG, JJ., concurred. MCGRATH and GRANT, JJ., did not sit.