[No. 3438.   July 10, 1930.]

[Rehearing Denied Aug. 25, 1930.]

KAVANAUGH et al. v. DELGADO et al.

[290 Pac. 798.]

Roberts & Brice, of Santa Fe, and M. A. Otero, Jr., Atty. Gen., for appellants.

Hunker & Noble and C. W. G. Ward, all of East Las Vegas, for appellees.

### OPINION OF THE COURT

WATSON, J.

This is a suit to cancel certain instruments by which the board of trustees of the Tecolote land grant conveyed in fee certain portions of the common and unallotted lands and the mineral rights in all of them. The grounds alleged were fraud in the transaction rendering the deeds voidable, the unconstitutionality of the statutory authority for the conveyance, 1929 Comp. § 29—1105, and the disqualification of the district judge designated in said section to approve the resolution of sale, by reason of his relationship to the purchaser. The defendants demurred to the amended complaint, and upon the sustaining of the demurrer and the refusal of the plaintiffs to plead further, judgment was entered dismissing the complaint.

The deeds were in pursuance of a contract between the board of trustees and defendant Delgado. The consideration was his agreement to satisfy all delinquent taxes and tax judgments affecting the common lands up to and including the year 1925, and at his own expense to survey the tracts which were to be conveyed to him. For this consideration, in addition to the conveyances, the board canceled Delgado's indebtedness of $430, and paid him $700 in cash.

While the state of New Mexico, by its Attorney General, became, by amendment, a party plaintiff, the situation here existing does not require us to consider the propriety of such participation by it. The other plaintiffs are three individuals who claim to be owners of land within the boundaries of the grant, and who sue for themselves and in behalf of others similarly situated.

We are of opinion that the individual plaintiffs are properly qualified to maintain the suit. As to municipal corporations, the principle of taxpayers' suits is well established in this jurisdiction. Asplund v. Hannett, 31 N. M. 641, 249 P. 1074, 58 A. L. R. 573, and cases cited. Ward v. City of Roswell, 34 N. M. 326, 281 P. 28. Tecolote land grant is not a municipal corporation in the sense that it constitutes an instrumentality or agency of the state. State v. Board of Trustees of the Town of Las Vegas, 28

N. M. 237, 210 P. 101. Yet, as counsel agree, it is a quasi municipal corporation. It was recognized as such by the Congress, which, by the Act of December 22, 1858 (11 Stat. 374), confirmed "the claim * * * of the Town of Tecolote" and relinquished thereto all title and claim of the United States. It was recognized by the federal executive by issuance of patent June 21, 1902, to the "Town of Tecolote." It was recognized by the territorial Assembly. By Laws 1903, c. 77, it was constituted "a body corporate under the name of the Board of Trustees of the Tecolote land grant" (section 1), vested with a representative form of government, and intrusted with the management and control of the common lands. Every practical consideration which supports the doctrine of taxpayers' suits is here present. The theoretical and technical differences between this and the ordinary municipal corporation are not, in our judgment, such as to call for a different rule. The principle of taxpayers' suits has been widely recognized; though there is no consensus of theory. As we remarked in Asplund v. Hannett, supra, practical considerations have induced the rule, and perhaps best support it.

We are also of opinion that the amended complaint charges actionable fraud. Disregarding much that is unnecessarily and perhaps improperly pleaded, we still find it alleged that, through collusion with the board of trustees, acting in disregard of its duty and betrayal of its trust, defendant Delgado has acquired property of the corporation of the value of $35,000 for the shockingly inadequate consideration of not more than $5,000. We have no doubt that a court of equity should take cognizance of this charge. McQuillin, Municipal Corporations (2d Ed.) §§ 2747, 2764, et seq.; Dillon, Municipal Corporations (5th Ed.) c. 31, § 1570 et seq.; Roper v. McWhorter, 77 Va. 214; Lackey v. Fayetteville Water Co., 80 Ark. 108, 96 S. W. 622; Central Bitulithic Paving Co. v. Manistee Circuit Judge, 132 Mich. 126, 92 N. W. 938; Balch v. Beach, 119 Wis. 77, 95 N. W. 132; Beyer v. Crandon, 98 Wis. 306, 73 N. W. 771; Jackson v. Norris, 72 Ill. 364.

In argument here all claims of the unconstitutionality of 1929 Comp. § 29—1105, in its present amended form,

have been abandoned, except the contention that the amendment (Laws 1927, c. 107) is violative of the distribution of powers clause (article 3, § 1). But this nice question is presented only as alternative to, and must be postponed for, the proposition "that Judge Luis E. Armijo, being a brother-in-law of Lorenzo Delgado, was disqualified to approve the resolution and deed, and his action was a nullity."

Appellants contend that the statutory requirement of "approval of such resolution (of sale) by the District Judge of the judicial district within which said grant is situate" confers a judicial power and requires performance of a judicial act, and that it was such an act as the spirit of the Constitution (article 6, § 18) does not suffer to be performed by a judge related within the specified degree to the purchaser.

These questions are also nice, but, being unnecessary to a decision, are not considered. Appellants' proposition above quoted will be seen to be dual. It will not matter whether Judge Armijo was or was not disqualified, unless from that fact the nullity of his act must follow. Singularly, appellants have contented themselves with their attempt to demonstrate the fact of disqualification. They have not sought to fortify their claim of the resulting nullity of the act. That such a result follows, we have not been able to satisfy ourselves. The disqualification is not absolute. Parties may waive it. Gutierrez v. Middle Rio Grande Conservancy District, 34 N. M. 346, 282 P. 1. We consider that under our Constitution the act of a judge disqualified on account of relationship is merely voidable. 33 C. J. "Judges," §§ 196, 201. It is an error or irregularity in the proceeding. Id. § 200. The remedy is not by an independent and collateral suit in equity.

Reverting now to appellants' alternative contention: The unconstitutionality of the amendatory act is urged only in case we hold the power conferred to be nonjudicial. So to hold would be contrary to appellants' contention here. We have disposed of their principal proposition on an as-

sumption that the power is judicial; hence we do not reach the alternative, and intimate no opinion regarding it.

Appellants did not allege an offer or tender to restore the consideration made before commencement of suit, but contented themselves with an offer to do equity. While many decisions may be found to the contrary, we think that by the better rule in equity the offer was sufficient. Pomeroy, Equitable Remedies § 688; 9 C. J. "Cancellation of Instruments," § 107.

We conclude that the court erred in sustaining the demurrer, competent plaintiffs having presented allegations of actionable fraud warranting the relief of cancellation. The judgment will be reversed, and the cause remanded, with a direction to overrule the demurrer and to proceed further consistently with this opinion. It is so ordered.

## ON MOTION FOR REHEARING

In an elaborate brief and an oral argument appellees have questioned our conclusion that the individual plaintiffs were qualified suitors. They have somewhat misconceived the basis of it, and we have thought that a further word might be useful.

We did not overlook the facts that the "town" of Tecoolte has no power to raise revenue by taxation, and that the plaintiffs are not taxpaying citizens of it. We did not consider this a mere application of the established doctrine of the right of a taxpayer under certain circumstances to question in equity the disposition of municipal property. Manifestly we have made a new application of the principles in which that doctrine originated.

The community land grant with which we now deal is an anomaly among corporations. While we have termed it a quasi municipal corporation, it is in some respects more like a private corporation. Its principal, if not its only, function is to hold title to and manage its common lands; which, by applying the rule of strict construction of an exemption, this court has held to be taxable. State v. Board of Trustees of Las Vegas, 28 N. M. 237, 210 P. 101.

We intend no modification of what has been laid down in earlier decisions regarding taxpayers' suits in general. But here we meet a new situation. We have an alleged wrong affecting the property of this corporation. If it were a private corporation, it would be a proper occasion for a stockholder's suit. If it were a municipal corporation, it would permit of a taxpayer's suit. It is neither. Both stockholders' and taxpayers' suits are based upon some interest in the subject-matter of the litigation and upon the refusal of the corporation itself to proceed. In the one case, though legal title rests in the corporate entity, equity recognizes a beneficial pro rata interest represented by each share of stock. In the other case, the interest is not so plain, but the status of taxpayer has been found a convenient indicium of it. Neither explanation fits this case. Yet we have an alleged wrong for which equity cannot well refuse a remedy. While established theory does not include this case, underlying principle and practical considerations point to the conclusion we have announced.

This, of course, implies that the owner of lands within the grant has some beneficial interest in the common lands. While appellees deny this proposition, we cannot doubt it. That such interest cannot be fitted into any existing classification is not conclusive against it. Many difficult problems have arisen from the slow and gradual implanting of a common-law jurisprudence upon a civil law territory and population. The courts could not reject rights or institutions as nonexistent, because they had not as yet been translated into terms of the common law. With common-law machinery, under the direction of a bar and bench bred to the common law, it has been necessary to enforce rights and recognize institutions unknown to that system. Where technical interpretation and reasoning must have failed, practical administration has found the way.

.The "town" of Tecolote was here when the United States troops took possession. It was recognized by the Congress more than thirty years before the common law was here adopted as the rule of practice and decision. Its transformation from a Mexican quasi municipal corpora-

tion (U. S. v. Sandoval, 167 U. S. 278, 17 S. Ct. 868, 42 L. Ed. 168) to a New Mexico corporation, is diffcult to trace either historically or legally. We do not attempt the task. The process is probably not yet complete. Nevertheless, we cannot but entertain the view that the owners of allotted lands within the grant have such an interest in the common lands that it would be a backward step if equity should deny them the rights of suitors in cases in which taxpayers in municipalities enjoy those rights.

The motion for rehearing is accordingly denied.

BICKLEY, C. J., and SIMMS, J., concur.

CATRON and PARKER, JJ., did not participate.